IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOHN ROBERTSON, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:10-CV-2058-D |
| VS. § | |
| § | |
| U-HAUL CO. OF TEXAS, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

The question presented by defendant's motion to abate and compel arbitration is whether, under Texas law, an at-will employee is bound by an arbitration policy implemented after he has already begun his employment, when he receives notice of the policy and continues working with knowledge of the policy. Concluding that the employee is bound by the policy, the court grants the motion and orders the parties to arbitrate this age and race discrimination case.

I

This is a removed action by plaintiff John Robertson ("Robertson") against defendant U-Haul Co. of Texas ("U-Haul") alleging claims for age and race discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Robertson began working for U-

Haul in 1998.[1] In 2006 U-Haul adopted an "Employment Dispute Resolution Policy" ("Arbitration Policy") that provides, in pertinent part, for "mandatory, binding arbitration of disputes, for all employees." D. Ex. A to Ex. 1 at 1.[2] The Arbitration Policy governs "all disputes relating to or arising out of an employee's employment with [U-Haul] or the termination of that employment," including employment discrimination claims. *Id.* It specifically applies to disputes or claims brought under the ADEA and Title VII. And the "Notice to Employees About U-Haul's Employment Dispute Resolution Policy" states: "<u>Your decision . . . to continue employment with [U-Haul] constitutes your agreement to be bound by the EDR</u>." *Id.* (emphasis in original). The Arbitration Policy also explains that because it changes the forum available for an employee's claims against U-Haul, employees may wish to

---

[1] The court bases its recitation of the background facts on the allegations of Robertson's state-court petition because they form the basis for determining whether the court should compel arbitration under the arbitration clause. *See Sharifi v. AAMCO Transmissions, Inc.*, 2007 WL 1944371, at *1 n.1 (N.D. Tex. June 28, 2007) (Fitzwater, J.).

[2] The court is citing the record in this manner because U-Haul did not comply with N.D. Tex. Civ. R. 7.1(i)(1) and 7.2(e) in briefing this motion. Rule 7.1(i)(1) provides that "[a] party who relies on documentary (including an affidavit, declaration, deposition, answer to interrogatory, or admission) or non-documentary evidence to support or oppose a motion must include such evidence in an appendix." Rule 7.2(e) states that "[i]f a party's motion or response is accompanied by an appendix, the party's brief must include citations to each page of the appendix that supports each assertion that the party makes concerning any documentary or non-documentary evidence on which the party relies to support or oppose the motion."

review the Employment Dispute Resolution Policy with an attorney or other legal advisor.

U-Haul requested that employees sign a copy of the Arbitration Policy in acknowledgment of receipt. It avers that it advised Robertson of the Arbitration Policy by two means. First, the Arbitration Policy was posted on U-Haul's intranet from February 20, 2006 through the date of Robertson's termination. Second, U-Haul's President Scott Graydon ("Graydon") sent Robertson a letter on February 15, 2008 explaining that the Arbitration Policy was a condition of Robertson's continued employment at U-Haul and that the Arbitration Policy bound Robertson, although he had, until then, declined to sign it. Robertson signed Graydon's letter in confirmation of receipt. U-Haul terminated Robertson's employment on September 26, 2009.

In 2010 Robertson filed an arbitration demand with the American Arbitration Association ("AAA"), alleging that U-Haul had wrongfully terminated his employment. Robertson alleges that U-Haul discriminated against him by firing him after he refused to unload the contents of a truck into a storage unit. He maintains that the tasks of loading and unloading trucks were not included in his job description, and that it would have violated company policy for him to follow his supervisor's instructions to unload the truck. According to U-Haul, the AAA dismissed Robertson's arbitration claim for failure to pay a filing fee. Robertson filed

the instant action in Texas state court. U-Haul removed the case to this court based on federal question jurisdiction. U-Haul now moves the court to abate the action and compel arbitration.

II

U-Haul contends that the Arbitration Policy requires arbitration of Robertson's claims. It maintains that Robertson accepted the Arbitration Policy when he continued to work for U-Haul after being notified that the Arbitration Policy was a term of continued employment. U-Haul argues that Robertson's failure to sign the Arbitration Policy does not invalidate his acceptance of it because the Arbitration Policy prescribed that continued employment constituted acceptance of its terms. Moreover, it posits that the Arbitration Policy is enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, as a condition of continued employment. U-Haul also contends that Robertson's claims must be submitted to arbitration because they fall within the scope of the Arbitration Policy. It maintains that the Arbitration Policy requires arbitration of any claims for wrongful termination or employment discrimination, including Robertson's claims for age and race discrimination.

Robertson responds that his failure to sign the Arbitration Policy constituted a rejection of U-Haul's offer to be bound by it. He posits that U-Haul's request that employees sign the Arbitration Policy indicates that U-Haul did not consider continued employment

to be the only means of accepting the Arbitration Policy. According to Robertson, if acceptance of the Arbitration Policy was a condition of continued employment, U-Haul should have terminated his employment when he refused to sign the Arbitration Policy. Instead, Robertson argues, despite the terms of the Arbitration Policy, U-Haul did not condition his continued employment on acceptance of the Arbitration Policy. He maintains that U-Haul's statement in the Arbitration Policy that employees may wish to discuss the policy with a legal advisor indicates that an employee could continue working for U-Haul without accepting the Arbitration Policy, while seeking legal advice. Robertson further argues that Graydon's 2008 letter reiterating the terms of the Arbitration Policy did not affect his prior rejection—by failing to sign the Arbitration Policy—of U-Haul's offer to be bound by it. Finally, Robertson posits that his arbitration demand shows only that he was aware that arbitration was one available means of resolving his claims, and not that he knew the Arbitration Policy required arbitration.

### III

The FAA allows a party aggrieved by another's failure to arbitrate a dispute to seek an order compelling arbitration. *See* 9 U.S.C. §§ 1-16. "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall

make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* at § 4. "Courts adjudicating a motion to compel arbitration engage in a two-step process." *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 476 (5th Cir. 2003). "First, the court must determine whether the parties agreed to arbitrate the dispute[]" by applying "the contract law of the particular state that governs the agreement." *Wash. Mut. Fin. Group, L.L.C., v. Bailey,* 364 F.3d 260, 263-64 (5th Cir. 2004). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that agreement." *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam)). "Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable." *Wash. Mut.*, 364 F.3d at 263.

There is no question, nor does Robertson dispute, that his claims fall within the scope of the Arbitration Policy. It provides, in relevant part, that it applies to "all disputes relating to or arising out of employment with [U-Haul] or the termination of that employment," including "claims for wrongful termination of employment, . . . employment discrimination, harassment or retaliation under the . . . Age Discrimination in

Employment Act [and] Title VII of the Civil Rights Act of 1964[.]" D. Ex. A to Ex. 1 at 1. Nor does Robertson argue that a federal statute or policy renders his claims nonarbitrable. Indeed, ADEA and Title VII claims can be subject to mandatory arbitration agreements. *See, e.g., Armstrong v. Assocs. Int'l Holdings Corp.*, 242 Fed. Appx. 955, 959 (5th Cir. 2007) (per curiam) (addressing ADEA); *Lopez v. H&R Block Fin. Advisors, Inc.*, 2006 WL 615996, at *3 (N.D. Tex. Mar. 10, 2006) (Fitzwater, J.) (addressing Title VII) (citing *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996)). The parties instead dispute whether the Arbitration Policy is valid. Under the FAA, arbitration agreements that are valid under general principles of state contract law and involve interstate commerce are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The parties do not dispute that the contract involves interstate commerce. The dispositive question is whether the Arbitration Policy is valid under Texas law.

IV

A

"The enforceability of an arbitration agreement is a question of law." *In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 781 (Tex. 2006) (per curiam) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)). "An employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employer establishes that the employee received

notice of its arbitration policy and accepted it." *Id.* (citing *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002)). "Notice is effective if it unequivocally communicates to the employee definite changes in the employment terms." *Id.* (citing *In re Halliburton Co.*, 80 S.W.3d at 568). "If the employee receives notice and continues working with knowledge of the modified employment terms, the employee accepts them as a matter of law." *Id.* (citing *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986)).

B

The court holds that the Arbitration Policy is enforceable and applicable to Robertson's claims. First, Robertson received proper notice of the Arbitration Policy. As Robertson recognizes, "to have knowledge of a modification, the employee must know the nature of the changes and the certainty of their imposition." *Hathaway*, 711 S.W.2d at 229 (citing *Stowers v. Harper*, 376 S.W.2d 34, 39 (Tex. App. 1964, writ ref'd n.r.e.)). Robertson does not dispute that he received a copy of the Arbitration Policy. Instead, he argues that imposition of the Arbitration Policy was not certain because U-Haul did not provide a clear means of acceptance, despite the Arbitration Policy's provision that continued employment constituted acceptance. He maintains that the appropriate means of acceptance was unclear because U-Haul requested that employees sign a copy of the Arbitration Policy in acknowledgment of receipt and suggested that he might wish to discuss its provisions with legal

counsel. But Robertson cites no authority for the proposition that either of these provisions in the Arbitration Policy affected the certainty of its imposition.

Robertson was properly notified of the Arbitration Policy when he received a copy. In *Dillard* the court held that an employee challenging the enforceability of an Arbitration Policy had received notice of the agreement when the record indicated that she had received a copy of it, even though Dillard could not produce the acknowledgment form or a witness who remembered seeing the employee at the meeting where Dillard presented the policy to employees. *Dillard*, 198 S.W.3d at 780. The court noted that the record established that Dillard presented its arbitration policy to employees at a mandatory meeting, that employees received a packet of materials containing a summary, a detailed guide, and an acknowledgment form; the acknowledgment form briefly explained the arbitration policy, stated an effective date, and conspicuously warned that employees were deemed to accept the policy by continuing their employment. *Id.* It noted that "[i]n *Halliburton*, [it had] concluded that similar information unequivocally notified employees of definite changes in their employment terms[.]" *Id.* (citing *Halliburton*, 80 S.W.3d at 568-69).

Second, U-Haul has established that Robertson continued working for U-Haul with knowledge of the modified employment terms. The Arbitration Policy, like the agreement in *Dillard*, contained

express warnings that employees accepted its terms by continuing their employment. *Id.* It clearly states that an employee's "decision . . . to continue employment with [U-Haul] constitutes your agreement to be bound by [the Arbitration Policy]." D. Ex. A to Ex. 1 at 1. Robertson continued to work for U-Haul until 2009, more than three years after U-Haul notified him that it had modified the terms of his at-will employment. His continued employment constituted acceptance of U-Haul's Arbitration Policy, and he is bound to arbitrate his current claims because they fall within the scope of the Arbitration Policy. *See Dillard*, 198 S.W.3d at 780 ("Garcia continued her employment at Dillard until 2002. Thus, if Garcia received the acknowledgment form, she agreed to Dillard's arbitration policy.").

\* \* \*

U-Haul's November 3, 2010 motion to abate proceedings and to compel arbitration is granted. The parties are ordered to participate in binding arbitration before the AAA, in accordance with its National Rules for the Resolution of Employment Disputes. The clerk of court is directed to close this case statistically. After the arbitration is concluded, either party may move the court

to reopen the case statistically for further proceedings provided for under the FAA.

**SO ORDERED.**

February 7, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE